Vanderveer v. Statesir, Adm'r, 39 N. J. Law, 593; Hollenbeck v. Ristine, 105 Iowa, 488, 75 N. W. 355, 67 Am. St. Rep. 306; Rehill v. McTague, 114 Pa. 82, 7 Atl. 224, 60 Am. Rep. 341; Gutshall v. Cooper, 37 Colo. 212, 86 Pac. 125, 6 L. R. A. (N. S.) 820.

In our opinion the trial court did not err in ruling that the defendant was not required to show that the omission from the account of the credits claimed by him was because of a mistake of both parties.

═══

**MOORE et al. v. DECKER.    (No. 108–2952.)**

(Commission of Appeals of Texas, Section B. April 28, 1920.)

1. **Mines and minerals ⬦78(7) — Whether certain land necessary to operation of oil wells held for jury.**

In action by lessees, entitled under lease to the necessary space to operate oil wells which they brought in, to restrain defendant, who had leased the other land from owners, from interfering with plaintiffs' operation of their wells and for possession of certain land, question of whether the land in dispute was necessary space for operation of the plaintiffs' wells *held* for jury.

2. **Appeal and error ⬦1085 — Decision of Court of Civil Appeals as to exclusion of evidence not reviewable.**

Decision of Court of Civil Appeals overruling assignments presenting questions as to exclusion of testimony do not present questions of substantive law reviewable by Supreme Court.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by J. B. Moore and others against H. R. Decker. Judgment for defendant was affirmed by Court of Civil Appeals (176 S. W. 816), and plaintiffs bring error. Reversed and remanded.

John T. Garrison and R. W. Franklin, both of Houston, for plaintiffs in error.

Ring, Carothers & Brown, of Houston, for defendant in error.

McCLENDON, J.    Plaintiffs below, J. B. Moore and others, were the owners of an oil lease, originally covering lots 13, 14, 15, and 16, in the Dunman-Conway disputed strip in Harris county. The lease was executed on May 30, 1906, by Richard Franklin, receiver, acting under the orders of the district court of Harris county, in a suit in which the land covered by the lease was in dispute. The dimensions of the lots are not given in the lease, other than that they are referred to as acres and fractions of acres. The lease, among other requirements regarding the man-

ner and time of beginning and continuing the work of drilling, provides:

"The second parties (lessees) shall continue to bore wells on said tracts as long as producing wells are brought in, and until there is a well on each of said acre tracts and on each of said fractional acres. If well or wells are brought in on premises, then same shall be operated continuously, and if drilling and operation or either is stopped for as much as 10 days at any one time, then this lease shall become null and void as to all the land embraced in this lease, not taken up by producing wells and the necessary space to operate them."

Two wells, known as the Queen Bee No. 1 and No. 2, were shortly after the lease was made bored by the lessees on one of the acre lots—either on lot 13 or lot 14, the pleadings and the evidence being uncertain as to which. These wells were operated continuously as producing wells up to about 1912, when, on account of being clogged up, they lay idle for about a year. This, however, was with the consent of the owners. In 1909 the owners executed an oil lease with the defendant Decker as lessee, covering the entire property embraced in plaintiffs' lease, "except such portion of said lease as is now being held by being actually operated under said McInerny (plaintiffs') lease, and being about 64 varas width east and west." Under this lease the defendant bored several wells upon the acre in question, and in 1913, when the plaintiffs were attempting to clean out the Queen Bee wells, defendant sought to interfere in the matter of the location of certain tanks upon the acre, using physical force in that regard.

The pleadings are voluminous and redundant; but, taking all the pleadings of plaintiffs together, the relief sought is an injunction against the defendant from going upon the acre in question, or boring wells thereon, or interfering with plaintiffs' operation of their wells, and for judgment for possession of said property. It is conceded in plaintiffs' pleadings that the lease was forfeited, except as to the acre upon which the two Queen Bee wells were bored, and it is contended by plaintiffs that they are entitled to said entire acre for two reasons: First, because of an agreement with the owners that the bringing in of a producing well upon any one acre would relieve said entire acre from forfeiture; and, second, because the entire acre was necessary for the operation of the wells thereon, under the express terms of plaintiffs' lease. The defendant concedes plaintiffs' lease valid as to the two Queen Bee wells, but denies that an entire acre was necessary for their operation, insisting that plaintiffs' entire lease was forfeited, except as to the space occupied by the two wells and necessary space for operating them.

The trial court instructed the jury peremptorily to find against the plaintiffs and to

find for the defendant upon his cross-action; and upon the jury's verdict judgment was rendered recognizing plaintiffs' right to the use of such space as was necessary to operate the two Queen Bee wells, and confirming title in the defendant to the property, rights, and privileges under his lease, as covering all the property in controversy, with the exception of the two Queen Bee wells, and removing the cloud from defendant's title thereto.

This judgment was affirmed by the Court of Civil Appeals, Fourth District. 176 S. W. 816.

[1] The main ground of error assigned in the Supreme Court is the action of the trial court in peremptorily instructing against the plaintiffs, it being contended that the plaintiffs were entitled to have submitted to the jury their claim to the entire acre in controversy, or so much thereof as under the evidence might be found necessary to the operation of their wells. This contention, we think, is well founded. The evidence was sufficient to sustain a finding that plaintiffs were entitled to the use of the entire acre of ground in connection with the two Queen Bee wells, as necessary for their operation. While the evidence does not clear up the doubt as to the exact lot upon which these wells are located, all the witnesses refer to the lot as an acre of ground; one of them testifying that he knew where the stakes of the acre were located, and that the acre was narrower east and west than north and south. Several of the witnesses testified that Queen Bee No. 1 was in the northeast corner of the acre, and Queen Bee No. 2 in the southwest corner. These wells were in existence and being operated in 1909, when the defendant obtained his lease; and it will be observed that said lease specifically excepts from its operation "such portion of said lease as is now being held by being actually operated under said McInerny lease, and being about 64 varas width east and west." This exception clearly embraces a strip of ground extending north and south, with a width of about 64 varas, which would seem to conform to the description of the acre upon which the Queen Bee wells were located, as described by one of the witnesses. Clearly, the defendant acquired no right to the land excepted from his lease, which land is described as a strip 64 varas east and west, and necessarily includes the two Queen Bee wells. Under the evidence we are inclined to think a jury would have been warranted in awarding to plaintiff the acre lot on which these two wells were located. In any event, there was sufficient evidence for the jury to have determined just what space was necessary for the operation of plaintiffs' two wells under their lease.

[2] The assignments of error which complain of the exclusion of testimony, whereby it was sought to prove that agreement had been made between plaintiffs and the receiver and plaintiffs and the owners of the land, that certain acts would be a sufficient compliance with the lease and prevent a forfeiture as to the particular acre involved, do not present questions of substantive law; and the decision of the Court of Civil Appeals, overruling these assignments, is final.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the district court for a new trial.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission on the question discussed.