JOYNER et al. v. R. H. DEARING & SONS
et al.

No. 3877.

Court of Civil Appeals of Texas. El Paso.
Nov. 2, 1939.

Rehearing Denied Dec. 7, 1939.

James & Tomlin, of Tyler (McEntire & Shank, of Dallas, on the brief), for plaintiffs in error.

Caves & Waldrop, of Henderson, for defendants in error.

PRICE, Chief Justice.

This case is here on writ of error to review a judgment of the District Court of Rusk County. Plaintiffs in error were plaintiffs below and will be here referred to as such; defendants in error will be designated as defendants.

Plaintiffs sought to prevent by injunction the erection of a dwelling house for an employee of defendants on a certain 7½-acre tract of land in Rusk County, the surface estate to which was vested in plaintiffs. The estate to the minerals thereunder vested in defendants. The mineral estate was vested in defendants by virtue of an oil and gas lease executed and delivered by plaintiffs to defendants' predecessors in title. The 7½-acre tract of land in question here is a part of a 15-acre tract leased as aforesaid to defendants' predecessors in title. Defendants sought by cross action to prevent interference by plaintiffs with the erection of the house on the 7½ acres of land.

On behalf of the defendants it was asserted that the lease created an easement on the surface estate of plaintiffs which entitled them to erect the house thereon for an employee and the erection of the house was reasonably essential to the prosecution

of their activity in connection with their mineral estate.

This is the second trial of this case. Judgment upon the first trial was adverse to plaintiffs, as it was in this, the second trial. The judgment in the first trial was reviewed by this Court and same was reversed and remanded for a new trial. The opinion disposing of the case was published in the Southwestern Reporter. See Joyner et al. v. R. H. Dearing & Sons et al., Tex. Civ.App., 112 S.W.2d 1109. Reference is here made to that opinion for a statement of the terms of the clause of the oil and gas lease involved in both appeals.

The two trials were on identical pleadings and the evidence introduced was about the same in each. No jury was demanded at the first trial, but at the second trial the issues were submitted to a jury. The findings of the court in the first trial and the verdict of the jury on the second trial were, on the material issues involved, substantially the same. The judgments were similar, in that both accorded the right to defendants to erect a residence for an employee on the land in connection with the prosecution of the business described in the oil and gas lease.

In all substantial particulars pertinent on this appeal the judgments are identical. Each undertakes to delimit the easement in question on the ground, that is, the specific rights thereunder. The judgment on the first trial provided for the erection of the house on the ground; that same was not to be more than twenty feet wide and twenty-four feet long, not over one story in height, the materials for the construction of the house were described, and provided that a fence might be erected around the premises, but did not specify the area that might be enclosed by the fence. The second judgment now under review established the location of the house at almost identically the same place as the first. It was not to be more than twenty-four feet wide and thirty feet long, the house to be one story, and contained certain other unimportant specifications as to the house and its location, but no mention was made of the enclosure of same by fence. Each judgment limited the use of the house to the use as living quarters to an employee of said defendants as may be by said defendants placed in charge of and charged with the duty and responsibility of guarding, caring for, preserving, maintaining and operating said land and premises and the tools, machinery, materials, supplies, appliances and equipment placed and located thereon from time to time by the said defendants for the purpose of drilling, exploring, mining and operating for oil and gas and laying pipe lines and building tanks, power stations and structures on said land and premises to produce the oil and gas therefrom and to save, care for and dispose of such oil and gas so produced; that such rights to continue as long as defendants used the land for such purposes. Each judgment enjoins the plaintiffs from interference with defendants in the use and enjoyment of the easement in the manner specified in the judgment.

In the first judgment the location and limits of the alleged right claimed by defendants under the easement were based on the findings of the court; in the second judgment on the verdict of the jury.

At all relevant times herein there were two operating oil wells on the 7½ acres involved herein. It was necessary for an employee of defendants to go in and upon and be about the premises in order to look after the production of oil and to care for and preserve machinery and appliances placed thereon by defendants incidental to and connected with their activities in the production of oil.

In the former appeal the judgment was attacked on two grounds: (1) that by the terms of the lease defendants in error acquired no right to erect either the house or the fence; (2) because said judgment provides that "such fence to enclose no more of said tract of land than is fairly and reasonably necessary for such purpose," [112 S.W.2d 1111] and is consequently vague, uncertain and indefinite, and therefore said judgment is void and unenforcible. On this second appeal the judgment is attacked on the first ground only, namely: that by the terms of the lease defendants in error acquired no right to erect the house. Joyner et al. v. R. H. Dearing & Sons, supra.

The omission of the attack on the ground of the fence is immaterial because the second judgment does not refer to a fence in any particular.

■ In the opinion of this Court in disposing of the former appeal written by Chief Justice Nealon, now deceased, it was said: "If, therefore, the erection of the house and fence are reasonably necessary to the full enjoyment of the right to produce oil from said premises 'and to erect structures thereon to produce, save and

take care of the oil and gas produced,' the court was not in error in issuing the writ of injunction. This was a question of fact which the court, upon sufficient evidence, determined in favor of plaintiffs in the court below. We think we would not be justified in disturbing this finding. If the oil is to be produced and sold profitably, the instruments and instrumentalities of production, storage, and transportation, must be safeguarded against loss by theft and fire and other causes." Joyner et al. v. Dearing & Sons et al., supra.

The evidence, as we have stated before, on the two trials was practically identical. In respect to its sufficiency and relevancy the questions are the same. If a question of fact was raised in the first appeal it is raised on this appeal. In the second trial the court seems to have been governed by a strict conformity to the principles announced by this Court on the former appeal.

Plaintiffs may be correct, and doubtless are, that this Court is not bound by the holdings on the first appeal. Burrage et ux. v. Hunt Production Co. et al., Tex.Civ. App., 114 S.W.2d 1228 and cases cited. Suffice it to say that we have carefully re-examined the questions involved in both appeals. We believe our holdings in the former appeal were correct. The reasons for the holdings are clearly and succinctly stated in the opinion written by the beloved late Chief Justice. If we wrote further it would be but a reiteration of the views there expressed.

The judgment is affirmed.

### On Rehearing.

In a forceful motion for rehearing plaintiffs in error insist neither on this appeal nor on the former appeal has the Court understood and considered their position. We believe in this matter they are mistaken. However, we shall write briefly on this motion.

■ One question alone is presented, that is, did the oil lease involved grant the easement in the surface estate as claimed in the petition of defendants in error. In determining this question we have at all times borne in mind that an easement lies in grant; that the end sought in the construction of a lease is the intention of the parties.

■ In determining the scope of a grant, the language used, the situation of the parties, the purposes of the grant and the nature of the subject matter, may all be considered. The situation and condition at the time the easement claimed is sought to be actively enjoyed may be considered, if such situation may reasonably be considered as having been provided for in the grant, in determining the extent thereof.

This is not an enlargement or restriction of the grant by construction, but a determination as to whether the situation provided for in the grant does or does not exist. To illustrate, on an unexplored area the right to erect the storage tanks under the lease in question here would perhaps not exist.

A good illustration, taking into consideration the purposes of the grant in arriving at the scope and compass thereof, is afforded by the case of Right of Way Oil Co. v. Gladys City O. G. & M. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268. There the grant of a railroad right-of-way coupled with the right to take and use all the timber, earth, stones and minerals thereunder was held not to cover the oil thereunder. Now if the right-of-way had been a mere customary easement, we hazard the opinion that the right to maintain a section house would probably be included therein.

On the area in question here there are two producing wells—wells drilled to a depth of approximately 3,600 feet, which, as we understand it, are flowing wells. These two wells and the appliances necessary to their efficient operation must represent the investment of capital substantial in amount. The appliances, no doubt, can be carried away; damage to the wells might be great from the acts of vandals or mischief makers. Someone constantly on the premises to guard, preserve and protect this valuable property does not seem to us to be unreasonable.

The judgment assailed does not provide for the maintenance of a country estate on the premises—it simply permits the erection of quarters for a workman to guard, protect and preserve the property and to regulate the production of oil. It seems to us that it is a question of fact whether, in connection with the production of oil, the saving and marketing thereof, this is not reasonably necessary and incidental. The oil is to be preserved and saved in the ground as well as after it has been raised to the surface.

Now the right to erect structures on the surface for producing, saving, etc., of oil and gas must include the right to maintain, guard, protect and preserve such structures. If this be true, then the surface is subject to this granted right. Steps taken in pursuance of the right must have due regard for the rights of the surface owner and likewise the rights of the owner of the mineral estate should be taken into consideration. A night watchman might be employed to protect the premises at night. Even were this true, some sort of a shelter would no doubt be required. In flowing the wells the entire time of a workman is not required. However, it may be that the constant presence of an employee or the existence of a situation indicating such might afford more efficient protection than a night watchman. A habitation is notice to thieves and vandals that at all times the property is under protection and if depredations are attempted discovery may follow. We believe a question of fact was presented as to whether the erection of the house in question was within the grant. If it was reasonably necessary to the prosecution of the activities contemplated under the lease, then the right existed; otherwise it did not. Moore v. Decker, Tex.Com.App., 220 S.W. 773.

The motion is overruled.