TEXACO INC., Appellant,

v.

Buford JOFFRION, Appellee.

No. 7446.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 18, 1962.

Rehearing Denied Jan. 15, 1963.

William P. Gibson, Wallace G. Malone, Dallas, Long, Strong, Jackson & Strong, Carthage, for appellant.

Tom Bankhead, T. G. Davis, Carthage, for appellee.

CHADICK, Chief Justice.

This is an action by a surface lessee against the mineral lessee of an 844.3 acre tract of land, to recover for the diminution in the value of a surface lease caused by the mineral lessee (1) negligently damaging and (2) using more of the surface of the tract than was reasonably necessary in the production of minerals. A jury verdict awarded the surface lessee $3,300.00, and the judgment on the verdict is affirmed.

The appellee, Buford Joffrion, moved to dismiss this appeal because the appellant, Texaco Inc., failed to file its brief within thirty days after April 26, 1962, the date the transcript and statement of facts were filed in this court. Texaco belatedly tendered a brief on June 9, and requested leave to file it June 11, 1962, the sixteenth day following the date the brief should have been filed. At the time of the motion and tender, argument and submission of the appeal had been set for September 18, 1962.

The motion was sworn to and offered the facts contained in this statement to excuse its delay, to-wit:

"Since the date the transcript and statement of facts were filed in this Court this attorney has had the most hectic busy time he has had in his five years with Texaco Inc. The acquisition of the TXL Oil Corporation was just in its concluding stages. This attorney had to attend the taking of depositions in a damage suit filed against Texaco on two different occasions; the depositions were taken by commission and not by agreement.

"This attorney represented Texaco in a Rule 37 hearing for a special permit which was vigorously contested by Humble Oil & Refining Company.

"Another damage suit against Texaco Inc., in the sum of $60,000.00, in which this attorney is handling the defense for Texaco Inc., was set for trial June 15, 1962, at Montague, Texas; however, this attorney has now arranged with plaintiff to have that lawsuit dismissed.

"The other attorney in this attorney's office, Mr. Wallace G. Malone, although appearing as an attorney of record, has not participated in this lawsuit, did not attend the trial, has not worked on any of the pleadings, and did

not assist in the preparation of appellant's brief. Mr. Malone has been busy in the trial of a lawsuit in Tyler, Texas, in attending in the taking of depositions in Oklahoma City, Oklahoma, and has handled other litigation during this period and is not familiar with this lawsuit.

"As stated before, the past six weeks have been the busiest this attorney has ever been since his employment by Texaco Inc. I have been working nights and yet it was still not possible to get this brief filed within the 30-day period."

Joffrion does not claim that tardy filing of the brief will do him material injury, but insists the wording of Rules 414 and 415 requires the appeal to be dismissed because Texaco failed to show cause excusing delay. Rule 414 obligates an appellant to file a brief in the Court of Civil Appeals within thirty days after the filing therein of the transcript and statement of facts, but provides that when good cause is shown for so doing, the Court of Civil Appeals may grant either or both parties further time for filing their respective briefs. Rule 415 says:

"When the appellant has failed to file his brief in the time prescribed, the appellate court may dismiss the appeal for want of prosecution, unless good cause is shown for such failure and that appellee has not suffered material injury thereby. The court, may, however, decline to dismiss the appeal, whereupon it shall give such direction to the cause as it may deem proper."

■ Examination of the excuse offered by Texaco shows that counsel for the appellant was engaged in the routine work of a busy lawyer during the time attention should have been given this appeal. By choice or neglect counsel favored other matters over preparation and filing of a brief in this case. One of the elements of good cause is the impact of some event beyond the immediate control of the litigant. Mere forgetfulness, neglect, or other pressing work can not excuse compliance with the briefing rules. Good cause for delay is not shown.

■ The question presented by this situation is whether or not this appeal should be dismissed because Texaco did not timely file its brief, when no material injury has or will be suffered by Joffrion. The force of precedent obliges a negative answer. The source of Rule 415 is Rule 39, "Rules for the Courts of Texas", promulgated by the Supreme Court of Texas in 1877. Rule 39 was amended, and in substance made applicable to Courts of Civil Appeals by revision in 1892 and again in 1921, evolving finally to its present form, as quoted above. 2 Texas Law Review, p. 30; and "Author's Comment", and other data on source under Rule 415, Vernon's Ann.Tex. Rules. At the turn of the century the Supreme Court decided that the rule as it then existed did not require a dismissal because an appellant, without good cause, failed to timely file a brief if the appellee was not materially injured by a tardy filing. San Antonio & Aransas Pass Ry. Co. v. Holden, 93 Tex. 211, 54 S.W. 751. The Holden interpretation has not been overruled and is still applicable. 2 Tex.Law Rev., p. 53, and 5 Tex.Law Rev., p. 74. Appellee's motion to dismiss is overruled.

Another question of briefing procedure must be decided. Joffrion objects to consideration of the points of error in Texaco's brief because the wording of the points bases them squarely upon the trial court's alleged error in overruling appellant's motions for instructed verdict. Twenty-one of Texaco's twenty-two points of error began with this phrase: "The court erred in overruling defendant's motion for instructed verdict made at the time plaintiff rested and at the close of all the evidence because * * *". The twenty-second point did not follow this word pattern. In the trial court, when Joffrion completed introduction of testimony and

rested, and again at the conclusion of all testimony, Texaco moved for an instructed verdict; both motions were denied. After jury verdict, Texaco moved for judgment non obstante veredicto; this motion was denied, too. Texaco did not file a motion for new trial. In support of his objection Joffrion cites Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887, where at page 891 it is said: "A point of error cannot be based upon a motion for instructed verdict. To form the basis of a point of error, grounds in a motion for an instructed verdict must be carried forward as assignments of error in a motion for new trial."

■ The objections would be satisfied by rewording the points to refer to the motion non obstante veredicto. The liberal rebriefing procedures available to Texaco would permit it to amend its brief. Rules 422, 429, 431 and 437. Delay would be the net result of sustaining Joffrion's objections. Furthermore, Texaco's point of error twenty-two is not subject to the objection, and is a reiteration of the errors alleged in the preceding twenty-one points. In addition, no difficulty is encountered in understanding Texaco's complaint, which is the absence of evidence to support the various adverse findings of fact made by the jury. The objection is overruled.

The jury found that Texaco used more lands in its drilling and producing operations than was reasonably necessary, and that such use was a proximate cause of the diminution in value of Joffrion's surface leasehold estate. In this connection the jury found the value of Joffrion's leasehold was reduced by $3,250.00 for the period between January 1, 1960 and the date of suit, and $50.00 for the unexpired remainder of the lease's twelve year term.

The following summary is the evidence in its most favorable aspect supporting the jury findings. Texaco drilled and operates seventeen wells producing oil from the 844.3 acre tract. Oil and salt water pits were excavated that were not large enough to hold the oil, petroleum substances and

salt water run into them in the course of production. The pits overflowed and these substances escaped onto the ground and into the creeks and water supply. Approximately 100,000 feet of pipe line was laid on the ground, the lines were "scattered", crossed open fields and hay meadows, and did not follow the roads to the wells or any particular pattern. The fence enclosing the land was cut in six different places, but no gates or cattle guards were installed for approximately fifteen months. Roads to well sites were graded, abandoned, and new roads built in different locations. The entire tract was rendered useless for dairying, pasturing, cultivation of crops and harvesting of hay by Texaco's use of the surface. The leasehold interest had a value of $5,000.00 per year for dairying purposes.

The essence of Texaco's complaint is that Joffrion was required, as a prerequisite to recovery, to introduce evidence showing what use of the surface a prudent mineral lessee would make, and how Texaco deviated from it. Specifically, Texaco argues that Joffrion had the burden of showing the custom in the industry in this regard, and Texaco's violation of the custom. Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W.2d 410; Wohlford v. American Gas Production Company, 5 Cir., 218 F.2d 213, and Robinson Drilling Co., Inc. v. Moses, Tex.Civ.App., 256 S.W.2d 650 are cited by Texaco to support its contention.

Neither of the cited cases support Texaco's contention. The Supreme Court in Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863, states that " * * * decision in Warren Petroleum Corp. v. Martin was based on two theories, (1) there was no proof of negligence; (2) the lessee was under no duty to exclude the cattle from the vicinity of the well and therefore the lessee owed no duty to the lessor except to refrain from intentional or wanton injury to his livestock. * * *" In Wohlford v. American Gas Production Company the court declines to discuss the question of reasonable use of the surface, saying, "Despite the claim of trespass, therefore, appellant's sec-

ond contention resolves itself into a negli-, gence issue, the same as his third contention which is frankly based on negligence." Robinson Drilling Co., Inc. v. Moses was decided by sustaining the points of error that plaintiff did not allege or prove that the drilling company was negligent, or that it used more land than was reasonably necessary in drilling two oil wells. The court's opinion does not summarize the facts proven, if any. No case has been brought to this court's attention that is precisely in point.

■ Dean Page Keaton of the School of Law, The University of Texas, and Lee Jones, Jr., of the San Antonio Bar, in 35 T.L.R., at p. 4 recite a typical oil, gas and mineral lease grant, very similar to the grant in this case, and write:

"* * * While the language is not expressly so restricted, all courts would hold that this provision means that the lessee can do such things only so long as they are reasonably necessary, or, alternatively, that he must exercise his respective rights and privileges with reasonable regard for the rights and privileges of the holder of the servient estate in the leased premises. *The question whether or not the use which is being made of the surface is reasonable is one of fact for the jury,* just as is the question of negligence. For example, the early leases apparently contained no provision for construction of houses on leased property for use of employees, and the question whether or not such could be done was regarded as one for the jury; and, indeed, in one case, the court in its judgment described the kind of house that could be constructed. Since the typical lease expressly authorizes the construction of a house, it would appear that the construction of a house for employees cannot now be questioned, although the kind and size could be regarded as unnecessary, and therefore an issue for the jury could

conceivably be raised as to whether the actual house constructed was the kind and size reasonably required." (Emphasis added.)

The emphasized language in this quote shows these eminent writers regarded the question of reasonable use of the surface as one of fact, proper for jury determination. They base their conclusion on Holbrook v. Continental Oil Company, 73 Wyo. 321, 278 P.2d 798 (1955); Moore v. Decker, 220 S.W. 773 (Tex.Com.App.1920); Joyner v. R. H. Dearing & Sons, 112 S.W.2d 1109 (Tex.Civ.App.1937), N.W.H. The reasoning underlying the quoted expression and the cases cited leave no room to doubt that an ultimate fact question in this case is whether or not Texaco used more of the surface of the land than was reasonably necessary to effectuate the purpose of its mineral lease.

■ This last conclusion narrows the next inquiry to the question of burden of proof, that is, was Joffrion required to show by proof of custom, usage, or practice in the industry, what use of the land Texaco, as a prudent operator, could make or should have made, and followed such proof by evidence that Texaco used more of the surface than was shown to be customary in the industry in the operation of its mineral lease. In negligence actions, general custom, usage and practice in an industry is admissible in evidence to aid a jury in determining an issue of negligence. Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863; Hubb Diggs Co. v. Bell, Tex.Com. App., 1 S.W.2d 575; Comanche Duke Oil Co. v. Texas Pac. Coal & Oil Co., Tex. Com.App., 298 S.W. 554; Gulf, Colorado and Santa Fe Ry. Co. v. Evansich, 61 Tex. 3. These cases, however, hold that custom is not an absolute test of negligence, for the custom itself may be negligent. By analogy, it seems to follow that a determination that Texaco's operation of its lease did or did not coincide with the custom in the industry is not an element of proof required of the plaintiff. Custom

is a fact a jury might weigh in determining a mineral lessee's reasonably necessary use of the surface estate and nothing more. The industry might customarily use more or less of the surface than is necessary to effectuate rights granted a lessee in a lease.

Inasmuch as Texaco's argument is that the proof made is deficient mainly because there is no evidence of industry custom, usage and practice to show what or how much use of the surface was necessary in drilling and producing the wells located on the tract, and it appearing that proof of industry practices is not a prerequisite to recovery and that there is evidence supporting the jury verdict that Texaco used more of the surface than was reasonably necessary to the enjoyment of its mineral estate, Texaco's points of error raising this issue are overruled.

██ Besides the jury findings already discussed, the jury found as acts of negligence and as proximate causes of the diminution in the value of Joffrion's leasehold that Texaco failed to bury its pipe line beneath the surface of the ground, and cut and left open the fenced enclosures. Defensively, besides the matters already discussed, Texaco urges that these negligence issues should not have been submitted as the mineral lease predated and was superior to Joffrion's surface lease and contains provisions that changes in ownership of the fee estate shall not be binding upon the lessee unless furnished with a copy of the instrument accomplishing the transfer. Joffrion for his part makes no claim that a copy of his lease had been furnished to Texaco.

Joffrion's suit is based in part upon trespass growing out of Texaco's use of more land than was reasonably necessary to the enjoyment of its mineral leasehold estate, and recovery on this theory is independent of and not founded upon some contractual obligation to pay found in the mineral lease. The intent of the paragraph referred to in the mineral lease appears to control pay-

ments to be made by Texaco and the concommitant rights of the parties upon the happening of events referred to in the lease. For the same reason, Joffrion's negligence action for cutting the fence is outside this particular contractual obligation. Discussion of Texaco's failure to bury its pipe line will be omitted as the judgment may be affirmed upon either the theory of trespass or negligence in cutting the fence.

Texaco's points of error are overruled, and the judgment of the trial court is affirmed.