**CITY OF HOUSTON, Appellant,**

v.

**Farrie DANCER, Appellee.**

**No. 7527.**

Court of Civil Appeals of Texas.

Texarkana.

March 10, 1964.

Rehearing Denied April 14, 1964.

R. H. Burks, City Atty., G. Gordon Whitman, Senior Asst. City Atty., Houston, for appellant.

Bill Cannon, Paul D. Filer, Jr., Tynes & Turk, Houston, for appellee.

CHADICK, Chief Justice.

The injured plaintiff had been convicted in a city court of violating a City of Houston penal ordinance and fined twenty dollars, and upon failure to pay was taken into custody by appropriate authority and held as a prisoner at the City penal farm. He, as a member of a detail of some fifty

prisoners, was assigned to clearing storm scattered debris from City parks in Houston. Under guard this work gang was transported from park to park. Immediately before injury the bus carrying the prisoners arrived at Mason Park and the prisoners were ordered out of the bus. As the plaintiff, in compliance with the order, was moving toward the door he cut his right foot when it struck the blade of an axe lying on the bus floor. The axe was used by the work detail, and had been loaded on the bus, along with other tools, by the prisoners as they left the previous job.

In the trial court this case was tried and decided on the theory that the City of Houston employed the injured prisoner in the execution of one of the City's proprietary functions, that is, maintaining a public park; and that the case was a tort action governed by the law applicable in common law negligence cases. The trial judge found the City negligent in failing to inspect the bus aisle-way, and in failing to provide a safe storage space for tools, finding also that each such act of negligence was the proximate cause of the plaintiff's injuries.

No Texas case factually similar is cited, nor has one been discovered by independent research. There are Texas cases that hold a municipal corporation is not liable for injury to a prisoner held in a municipal penal institution, though injury was proximately caused by the negligence of officers or employees in charge of the operation or maintenance of the facility. Stinnett v. City of Sherman, Tex.Civ.App., 43 S. W. 847, N.W.H.; Valdez v. Amaya, Tex. Civ.App., 327 S.W.2d 708, N.W.H. See also 46 T.J.2d 292, Sec. 17. Such is the general rule in most jurisdictions. 46 A. L.R. 94; 50 A.L.R. 268; 61 A.L.R. 569; and 19 Ruling Case Law 404.

Assuming, as the parties do, that the City of Houston, as distinguished from its agents, servants and employees, has undertaken to do so and may legally require labor of a person adjudged guilty of vio-

lating its penal ordinances upon failure of the guilty person to pay the fine assessed, where the required work is performed either on the City's penal farm or in the City's parks is incidental to the exercise of the power. That is to say, the exercise of sovereign power to require the plaintiff to work out his fine is the primary and dominant purpose of the City's involvement and is the factor that precludes liability; his transportation to a place where work is to be performed is an incident of the exercise of power. Unquestionably the City would have incurred no liability had the injury occurred during movement of the work gang about the City penal farm. Stinnett v. City of Sherman, supra; Valdez v. Amaya, supra. This record supplies no reason for holding a different principle of liability applicable when a prisoner is injured while being transported from one park to another to perform work required in the discharge of the fine assessed against him.

The judgment of the trial court is reversed and judgment rendered that the defendant in the trial court. and appellee here take nothing by his suit.

FANNING, J., concurs.

DAVIS, J., dissents.

DAVIS, Justice.

I dissent. The transcript and statement of facts in this case were filed in the Court of Civil Appeals at Houston on March 11, 1963. According to Rule 414, Vernon's Annotated Rules of Civil Procedure, appellant had 30 days in which to file its brief. No brief was filed. Under Rule 415, V.A.T. R.C.P., it could file a motion and show "good cause" for its delay and request permission to file the brief. This was not done. The case was transferred to this court by the Supreme Court of Texas on June 21, 1963. On July 31, 1963, the case was set for submission and oral argument on September 30, 1963. No brief having been filed or a motion filed. showing "good

cause" for the late filing of the brief, or that the appellee would not be materially injured thereby, the case was dismissed for the want of prosecution in an unpublished opinion on August 6, 1963. Appellant filed a motion for rehearing in which it set out that it desired to file a brief and did not desire to abandon the appeal. It pointed out that it had not filed its brief for the reason that it was following the "customs and practice developed and administered by the Houston Court of Civil Appeals". (Apparently, it forgot about Rules 414 and 415). It set out that the Houston Court of Civil Appeals had regularly and customarily given the briefing rules a most liberal construction and it had not enforced the respective 30 and 25 day period of time for the appellants and appellees to file their briefs. It set out that "good cause" existed for the reinstatement of this appeal, but it did not say what that "good cause" was. There was no statement that the appellee would not suffer any material injury thereby. It then said: "Appellant would further represent and show unto the court that it can and will tender its brief for filing at such time as the court may direct."

Appellee did not file a reply to the motion for rehearing, or in any way contest the filing of the brief.

I wrote the Judges of the Court of Civil Appeals in Houston, inquiring about their practice as requiring briefs to be filed. I received the following reply:

"Honorable Matt Davis
Associate Justice
Court of Civil Appeals
Texarkana, Texas

"Dear Judge:

"We do not enforce the requirements of Rule 414. We have instructed our Clerk to file any appellant's brief that is presented as much as 40 days before the date of submission, and any appellee's brief that is presented as much as 15 days before submission. If the briefs are presented on dates nearer submission, we require a motion. In acting on the motion, we are quite liberal and allow filing if we feel the opposite party is not prejudiced and there will be no delay in submission.

"We feel the matter is not jurisdictional and allowance of late filing is addressed to the discretion of the Court.

"If, however, no brief is filed, which happens very infrequently, we do dismiss for want of prosecution.

"Very truly yours,

/s/ Spurgeon Bell"

The other Judges on this Court granted the motion to reinstate the case. I dissented. The case was postponed from September 20, 1963, until November 4, 1963. Appellant was given until October 3, 1963, to file its brief. It filed its brief on October 3, 1963.

I have much love and admiration for Chief Justice Spurgeon Bell and the other Judges on the Houston Court. At the same time, I am of the opinion that if the Texas Supreme Court makes a rule of civil practice it should be reasonably enforced. No "good cause" has been shown for the late filing of the brief in this case. Neither has it been shown that the appellee will not suffer material injury thereby. The appellee has now suffered material injury by permitting the late filing of the brief.

What does Rule 414 mean? Why was it put in the Texas Rules of Civil Procedure? Does it have a purpose? Should the rule be followed, or be ignored? The rule reads as follows:

"Rule 414. Briefs: Time for Filing, Etc.

"Briefs of each party shall be subscribed by at least one of his attorneys, shall give the post-office address of each attorney whose name is signed thereto, and shall state that a copy of such brief has been delivered or mailed to each group of opposing parties or

counsel thereof. Appellant shall file three copies of his brief in the Court of Civil Appeals within thirty days after the filing therein of the transcript and statement of facts, if any, having theretofore delivered or mailed an additional copy to opposing parties or their counsel. Appellee shall file three copies of his brief in said court within twenty-five days after the filing of appellant's brief and at the same time deliver or mail an additional copy to each group of opposing parties or counsel thereof. Any Court of Civil Appeals may by rule permit the filing therein of a less number of briefs. Upon *good cause* shown, the Court of Civil Appeals may grant either or both parties further time for filing their respective briefs, and may extend the time for submission of the case. The court may also shorten the time for filing briefs and the submission of the cause in case of emergency, where in its opinion the needs of justice require it. As amended by order of March 31, 1941; order of June 16, 1943, effective Dec. 31, 1943." (Emphasis added).

What does Rule 415 mean? Why was it put in the Texas Rules of Civil Procedure? Does it have a purpose? Should the rule be followed, or be ignored? Rule 415 reads as follows:

"Rule 415. Briefs: Dismissal for Failure to File

"When the appellant has failed to file his brief in the time prescribed, the appellate court may dismiss the appeal for want of prosecution, unless *good cause* is shown for such failure and that appellee has not suffered material injury thereby. The court, may, however, decline to dismiss the appeal, whereupon it shall give such direction to the cause as it may deem proper." (Emphasis added).

What does "good cause" mean? I am of the opinion that "good cause" means a "good reason". It has nothing to do with any practice developed by any court, and has nothing whatever to do with the whims and wishes of the attorneys. It certainly does not mean that "good cause" exists because of the fact that the attorneys are busy with other legal practice. Judge Chadick in Texaco, Inc. v. Joffrion, Tex.Civ.App., 363 S.W.2d 827, W.R., N.R.E., said: "Good cause for delay is not shown". I approved the opinion in that case, but did not entirely agree with the results. A motion to dismiss the appeal had been filed therein. I can readily see that material injury would be suffered by the appellee in this case by a delay of a decision. As a result thereof, material injury has been suffered by the appellee by having the judgment reversed and rendered against him.

What does Rule 415 mean where it says, "Appellee [will not suffer] material injury thereby"? A person who has a judgment against another is entitled to have the judgment either affirmed or reversed as speedily as possible. We have often heard the statement, "The machinery of justice grinds slowly". In most instances, it is the fault of the lawyers. I am of the opinion that a motion should have been filed for the late filing of a brief in this case, should have been verified, should have alleged the "good cause" that did exist, and set out the facts, and should further have alleged that appellee will not suffer any material injuries by the delay.

Several cases have been recently transferred to this court by the Supreme Court of Texas from the Court of Civil Appeals in Beaumont. Many of the cases were set for oral argument. I will not attempt to put down how many motions have been filed for the late filing of briefs. Very few, if any, stated a good cause. Three of the cases that have been set have already been continued—over my dissent—and an extension of time has been granted in which to file the late briefs. None of them have alleged that no material injury will be suffered by the other side.

The Court of Civil Appeals in Corpus Christi has recently dismissed two cases because of the failure to comply with the

rules of civil practice. Consolidated Casualty Ins. Co. v. Wade, Tex.Civ.App., 373 S.W.2d 841, was dismissed because of the failure to show "good cause" for the late filing of the statement of facts and transcript as required by Rule 386, V.A.T.R. C.P. Franke v. Franke, Tex.Civ.App., 373 S.W.2d 891, was dismissed because the appellant failed to file a motion for the extension of time within fifteen days after the sixty day period from rendition of final judgment under Rule 386, V.A.T.R.C.P.; and, because the appellant did not file a brief in more than 30 days after filing the transcript as required by Rule 414 of the Rules of Civil Procedure, nor file a motion showing "good cause" existed for her failure to do so. Rule 415. Apparently, such is not the practice used by the Houston and Beaumont Courts of Civil Appeals.

The Supreme Court of Texas made the Rules of Civil Procedure. I doubt the wisdom of any Court of Civil Appeals trying to change them. I am of the opinion that Rules 414 and 415 mean exactly what they say. They were put in the Texas Rules of Civil Procedure for a guide to go by. They have a purpose to require appellants to file a brief within 30 days after the transcript and statement of facts have been filed, or to file a motion and show exactly what "good cause" exists for the late filing of a brief, and that no material injury will be suffered by the appellee. The rules should be followed, and should not be ignored.

The Supreme Court of Texas should grant a writ of error in this case. It should say whether or not Rules 414 and 415 should be given any effect. If it is NOT necessary to file a brief within 30 days, or file a motion showing that good cause does exist and the other side will not suffer material injury thereby, the rules should be repealed. Then things will get in a "HELL OF A SHAPE". See decision under Rule 415, V.A.T.R.C.P., and dissenting opinion of Justice Frankfurter in Rogers v. Missouri P. R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

Appellee-plaintiff, Farrie Dancer, sued appellant-defendant, City of Houston, for damages for injuries he received because of the negligence of the agents, servants and employees of the City of Houston. On September 23, 1961, appellee was ordered imprisoned by a municipal corporation court judge as the result of a conviction of a traffic violation under a $20.00 fine. The appellee was placed by the appellant on its Municipal Prison Farm within the City and ordered to serve out his fine at the rate of $3.00 per day. Appellee called his lawyer and requested that he pay the fine. This, the lawyer did. The appellee was not released from prison and continued on the prison farm until September 26, 1961, when he received the injury. They were cleaning up the City parks as the result of Hurricane Carla. About fifty prisoners were placed upon a bus owned and operated by the appellant. They were taken to various public parks in the City by armed guards. Upon arrival at John T. Mason Park, appellee, along with other prisoners, was forced to hurriedly leave the bus. In response to the instructions of appellant's guards, appellee was hurriedly making his exit from the bus and stepped upon an axe that was lying in the aisle. The axe was so turned that he severely cut his right foot. The appellant carried the appellee to the Jefferson Davis Hospital, where he received medical treatment. Twelve or more stitches were required to close the wound. Appellee was taken back to the prison farm by appellant, and was thereafter released without any legal arrangements being made in his behalf.

The case was tried before the court without a jury. The court found that the agents, servants and employees of appellant were guilty of negligence in their failure to keep the aisle-way of the bus clear and unobstructed; it failed to inspect the aisle-way of the bus; and it failed to provide a safe place in which to store the tools required to do the work on the City Park.

He concluded, as a matter of law, that appellant was engaged in a proprietary func-

tion as distinguished from a governmental function, and was liable. The appellant has perfected its appeal and brings forward eight points of error.

The only question involved in the case is whether or not the City was engaged in a "governmental function" or a "proprietary function". Much has been written on the questions. Some of the courts of some of the states take the position that a city in preparing and maintaining a public park is engaged in a "governmental function". Government is defined by Webster's Dictionary as follows:

"Government, n. (Fr. gouvernment, from gouverner; L. Gubernare, to govern.

"1. Direction; regulation; control; restraint; the exercise of authority; the administration of public affairs, according to laws and usages, or by arbitrary edicts; as, parental government.

"2. The system of policy in a state; that form of fundamental rules and principles by which a nation or state is governed; as, a republican government.

"3. An empire, kingdom, or state; any territory over which the right of sovereignty is extended.

"4. The right of governing or administering the laws; as, the King of England vested the government of Ireland in the lord lieutenant.

"5. The persons or counsel which administer the laws of a kingdom or state; executive power.

"6. In grammar, the influence of a word in regard to construction, as when established usage requires that one word shall cause another to be in a particular case or mode."

Governmental is defined as "pertaining to government; made by government".

Actually, government is a form of fundamental rules and principles by which the City of Houston is governed. Anything that is done for the protection of society and protection of the property is a governmental function. In 18a, Words and Phrases, p. 293, under the heading "Maintenance and Operation of Public Parks and Playgrounds" courts throughout the Nation have held that such is a "governmental function". As late as February 21, 1958, the Court of Civil Appeals in Kentucky, in Baker v. City of Lexington, 310 S.W.2d 555, ruled that the maintenance of a city park was a governmental function. Yet, in Taylor v. Kansas City, Mo.App., 353 S.W. 2d 814, the Court held that the City was responsible for failure to exercise ordinary care to maintain parks in a reasonably safe condition as to children attracted there. There is a case cited by the Texas Court that holds such to be a "governmental function". Schooler v. State, Tex.Civ.App., 175 S.W.2d 664, W.R., W.O.M. It also cites Wiggins v. City of Fort Worth, Tex. Civ.App., 299 S.W. 468, but holds that the City may purchase, improve and maintain land for parks, which is a governmental function. The Supreme Court granted a writ of error in the case, and it held that such was true, but also held that the maintenance of a bear cage in a public park with a hole in its outer face through which a bear could reach a child constituted a dangerous condition which was a "nuisance". City of Fort Worth v. Wiggins, Tex., 5 S.W.2d 761. In City of Waco v. Branch et ux., (Comm.App.), 5 S.W.2d 498, op. adpt. by the Sup.Ct., held that the maintenance of a public park by a city is a "proprietary function".

The facts in this case show that the City was engaged in cleaning up and maintaining the public parks as the result of Hurricane Carla. From the facts in this case, the City was engaged in a proprietary function or a ministerial function. "Proprietary" is defined by Webster's Dictionary as:

"Proprietary, a. (From proprietaire, from LL. proprietarius; L. proprietas, property.) Belonging to a proprietor or owner, or to a proprietary; pertaining to ownership.

"Proprietary article: any article of commerce whose manufacture and sale are protected by letters patent.

"Proprietary colony: a colony settled on a private land grant, with governmental authority secured to a certain person or persons;

"Proprietary right: Any right or exclusive ownership secured and protected by patent or copyright.

"Proprietary, n.: pl. proprietaries, 1. A proprietor; an owner; one who has the exclusive legal right or title to anything.

"2. A book or list of proprietors, collectively; the whole body of proprietors; as, the proprietary of a county.

"3. In church history, a monk who had reserved goods and effects to himself, notwithstanding his renunciation of all as his profession."

"Ministerial" is defined by Webster's Dictionary as:

"Ministerial, a.1. Ministering; performing service.

"2. Pertaining to executive offices as distinct from judicial; administrative.

"For the ministerial offices in court, there must be an eye to them.—Bacon.

"3. Sacerdotal; pertaining to ministers of the gospel; as, ministerial garments; ministerial duties.

"The ministerial benches; the benches in the English House of Commons to the right of the speaker, occupied by members of the government and their supporters; by extension, the government or its supporters."

It will be pointed out that ministerial is distinct from judicial or administrative. Actually, a public park is not necessary to a city government. Neither is one necessary to the county, state or nation. They are not built for the benefit of anyone. They are built and maintained for the amusement of the public generally. After reading many authorities, it appears that public parks, parkways, zoos and bathing pools or water-slides are for the amusement of the public generally, and do not constitute a "governmental function". 40 T.J.2d 318, 631, and authorities cited thereunder.

There are many cases to the contrary. Hoggard v. City of Richmond, 172 Va. 145, 200 S.E. 610, 120 A.L.R. 1368; 18A, Words & Phrases 293, and pocket part. But when you look at the meaning of the words "governmental function", "proprietary function", and "ministerial function" it does not seem that the building and maintaining of the public park was necessary for the protection of the people who actually live in the City of Houston. They did not derive any benefit at all from it. Such acts were for the amusement of the public generally, from which nobody actually gained any benefit whatever. The operation of a city waterworks for a profit, or the operation of a swimming pool for the amusement of the public generally, the maintaining of parks for various purposes are not for the benefit of anyone; the keeping of zoos for the thrill and excitement of the people could not be a governmental function. It seems that the City of Houston was acting in a proprietary or a ministerial function at the time of the injuries, and the city is liable. Claitor v. The City of Comanche, Tex.Civ. App., 271 S.W.2d 465, N.W.H.; 38 Am. Juris. 246, Sec. 559; 38 Am.Juris. 328, Sec. 627; 38 Am.Juris. 330, Sec. 629; 38 Am. Jur. 334, Sec. 633; 38 Am.Juris, 340, Sec. 636; 38 Am.Juris. 342, Sec. 637. Williams v. Town of Morristown, et al, Tenn.App., 222 S.W.2d 607; 63 C.J.S. Municipal Corporations § 907, page 313; Scroggins v. City of Harlingen, 131 Tex. 237, 112 S.W. 2d 1035; City of Lubbock v. Green (Fifth Circuit), 201 F.2d 146; Lundahl v. City of Idaho Falls, 303 P.2d 667; Ballard v. City of Tampa, 124 Fla. 457, 168 So. 654.

I would overrule the appellant's points of error and affirm the judgment of the trial court.