## SCHOOLER v. STATE.

No. 4305.

Court of Civil Appeals of Texas. El Paso.

May 13, 1943.

Rehearing Denied June 3, 1943.

Kerr & Gayer, of San Angelo, for appellant.

Gerald C. Mann, Atty. Gen., Frederik B. Isely, Asst. Atty. Gen., and J. Edward Johnson, of Brownwood, for appellee.

McGILL, Special Commissioner.

This appeal is from a judgment of the County Court of Brewster County rendered in a condemnation proceeding prosecuted under the provisions of Title 52, Arts. 3264 to 3271, R.C.S.1925, as amended. Vernon's Ann.Civ.St. Arts. 3264–3271. The land involved is located in Brewster County, being Survey 31, Block 19, G. H. & S. A. Ry. Co. Survey, containing 640 acres, and is situated within the area designated as "the Big Bend National Park," by S.B. 123, being Ch. 4, Acts of the 46th Leg., Reg. Sess., 1939. Vol. 1, Acts of the 46th Leg., Reg. Sess., 1939, p. 520, Vernon's Ann.Civ.St. art. 6077e. The proceedings were instituted by appellee the State of Texas, acting through the Texas State Parks Board, against appellant, W. H. Schooler, by petition and written statement filed with the County Judge of Brewster County on June 22, 1942. On the same day the Judge appointed three Special Commissioners to assess the damages. Hearing before the Commissioners resulted in an award of $1.50 per acre, or $960, from which was deducted $235.13, found to be due and owing to the State for the benefit of the Permanent School Fund. Appellant timely filed a motion to strike out the award and set aside the entire proceedings. This motion was overruled by the court, appellant filed his answer, and the cause proceeded to trial. At the close of the evidence the court charged the jury:

"If you find for the Plaintiff, let your verdict read: 'We find for the plaintiff and assess the damages to the defendant in the sum of $2.25 per acre.'

"It is shown in the evidence the defendant Schooler owes the Permanent School Fund of the State of Texas $624.87, and from any award that you may give, this amount will be deducted or subtracted from the total allowed the defendant."

The jury returned the following verdict: "We find for the Plaintiff, and assess the defendant's damages at the sum of $2.25 per acre."

The court thereupon rendered judgment condemning the land in favor of appellee and ordering appellee to pay to appellant the sum of $815.13, being $2.25 per acre for 640 acres, or $1,440, less $624.87, which the court found was owing by appellant to the Permanent School Fund of the State. Appellant filed motion for a new trial, which was overruled, and he has duly perfected this appeal.

Summarizing the points on which a reversal is sought: The court was without jurisdiction because appellee did not admit appellant's title, but sought to set up a paramount title; the State had no power to condemn the land for the benefit of the Federal Government; the proceedings should have been dismissed because the Special Commissioners were appointed upon an ex parte application and had served in about forty similar cases prior to the hearing before them in this case; appellant was denied a fair and impartial jury; judgment for title and possession of the land was erroneous without payment to appellant of the amount of damages awarded, or without deposit of same in money

in court under Sec. 1, Art. 3268, R.C.S.; no necessity for condemnation was shown; the court peremptorily withdrew the case from the jury on all issues save value of the lands with minerals included, and rendered judgment on its own findings, contrary to all evidence of necessity to condemn the land and minerals therein; admission of hearsay evidence as to value of the minerals; the award was inadequate.

We shall discuss these points so far as deemed necessary to a proper disposition.

In its original petition appellee alleged that the land in question was located within the area designated by Senate Bill No. 123, enacted by the 46th Legislature at its Regular Session, as "The Big Bend National Park"; that such bill vested the Texas State Parks Board with the power of eminent domain, and authorized it to condemn lands situated within the designated area in the name of the State for park purposes; and that the acquisition of the full and complete title to the lands was necessary to the completion of such park project; that appellant owns "all of the following property and property rights sought by condemnation," describing the land in controversy. Further:

"Petitioner would further aver that Defendant, W. H. Schooler purchased the land in question from the State of Texas and/or were reserved by the State of Texas at the the Texas Permanent School Fund, and that he has not fully paid for same, and consequently same has not been patented unto him by the State. That all the minerals were reserved by the State of Texas at the time of the sale thereof. That as of June 1, 1942, there was due and owing unto the State of Texas for the benefit of the Permanent School Fund of Texas by the said Schooler, as aforesaid, principal in the sum of $576.00 and interest in the sum of $48.-87, totalling $624.87. That interest is daily accruing on said amount at the rate of 8½¢ per day. Petitioner further alleges that on account of the above and foregoing that the State of Texas and/or the Permanent School Fund has a superior title to said land and premises, and that upon a hearing hereof that the amount owing to the State of Texas for the benefit of the Permanent School Fund should be deducted from the award made to Schooler by said Special Commissioners to the end that the same might be paid unto the State of Texas for the benefit of the Permanent School Fund.

"V. It will be necessary, in view of the purposes for which said land will be used, for petitioner to acquire all of the property, property rights, rights and privileges of said defendants and each of them in and to said land and premises, and will require the full, final and complete condemnation of said property and property rights, and the vesting of all of the title, property rights and interest of said defendants in said property in said petitioner for park purposes."

By its supplemental petition, appellee alleged: "Petitioner would further relate that under date of July 30, 1942, it purchased all the minerals in, on and under said lands from the Permanent School Fund of the State of Texas at a price of 50¢ per acre, and presently owns same. Therefore, Petitioner says in the event of condemnation that Defendant would not sustain any damages whatsoever insofar as the mineral estate is concerned."

Among other pleadings appellant filed general denials to the original and supplemental petitions, and also, in reply to the supplemental petition, alleged:

"Defendant denies that plaintiff is the owner of all the minerals and in this connection would show that this defendant is owner of 15/16 of the minerals and the plaintiff is owner of 1/16 of the minerals. That under the Relinquishment Act of the State of Texas, being articles 5367 to 5382 inclusive this defendant owns 15/16 of the minerals.

"That if defendant does not own 15/16 of the minerals then under the law being articles 5367 to 5382 of the Revised Statutes of Texas, he as owner of the soil has the right to lease the land for mineral development and to receive 1/2 of all bonus and rentals paid and all royalties which is a valuable right and reasonably worth $20.-00 per acre."

Construing these pleadings together, it is apparent that appellee did not deny appellant's title to the land or interest therein which it sought to condemn; nor set up a paramount title thereto. Appellant's purchase from the Permanent School Fund was specifically alleged, and the further allegation that because of the balance owing to this Fund, the State had a superior title to the land, does not deny appellant's title, but tends to specify the title or interest owned by him. The asser-

tion of a superior title by the condemnor is not inconsistent with the power to condemn such title as the condemnee has when that right is conferred by statute. To illustrate, a vendor on whom is conferred by statute the right of eminent domain with power to condemn in fee sells property, retaining a vendor's lien to secure payment of the purchase price. Before payment is due, it becomes necessary to secure title to the property in fee for a public use. The vendor's power to condemn the fee would certainly not be lost because of the superior title held by it as security for its debt. The situation disclosed by the pleadings is analogous when applied to title to the surface of the lands in question. True, appellee did allege that at the time of sale all the minerals were reserved by the State, and that it had purchased them from the Permanent School Fund of the State, and that appellant would not sustain any damages in the event of condemnation insofar as minerals were concerned. Appellant's general denials would have put these allegations in issue and deprived the County Court of jurisdiction had he not specifically plead the Relinquishment Act embodied in Arts. 5367 to 5382, R.C.S. 1925, Vernon's Ann.Civ.St. arts. 5367–5382, as the source of his title. Such plea is tantamount to an admission that the minerals had been reserved by the State at the time of the sale, and that he had no title thereto, but only a right to sell a 15/16th interest therein as agent for the State and to retain one-half of all rentals and bonuses received therefor for his services. Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655. His rights arising from this agency might interfere with the full use and enjoyment of the title to the surface sought to be acquired and the minerals held by the State, and such title did not operate as an insurmountable obstacle to its acquiring his rights, privileges or benefits created by the Relinquishment Act by condemnation. Houston North Shore R. Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 108 A.L.R. 1508.

Senate Bill 123, enacted by the 46th Legislature (Vol. 1, Acts of the 46th Leg., Reg. Sess., p. 520), provides for the acquisition by the State of Texas of 788,000 acres of land situated in Brewster County to be known and designated as "The Big Bend National Park," and by said bill such lands are established, dedicated and set apart as a public park for the benefit and enjoyment of the people. The Texas State Parks Board is the agency empowered and authorized to carry out the provisions of the Act. It is vested with the power of eminent domain and authorized to acquire for park purposes lands within the designated area by condemnation, following the procedure applicable to the condemnation of lands by counties or railroads, or any other method authorized by law. It is directed to acquire all lands in fee simple title, without any reservation of any character whatsoever. The Act authorizes the United States Government, through the Secretary of the Interior, to acquire title to the area designated as The Big Bend National Park, and authorizes the Governor of the State to execute a deed of conveyance to the United States Government covering the area acquired under the terms of the Act for the use of the public for recreational park purposes, in consideration of the United States Government agreeing to establish and maintain such area as a National Park under an Act of Congress, being Public No. 157, enacted by the 74th Congress, Act June 20, 1935, 49 Stat. 393, 16 U.S.C.A. §§ 156–158.

The Legislature has declared that the lands herein sought to be condemned shall be set apart for use as a public park for the benefit and enjoyment of the people. The use for which property is condemned must in fact be a public use, to render such taking lawful. Sec. 17, Bill of Rights, Vernon's Ann.St. Mere legislative fiat does not make that a public use which is not such in fact, and the question as to the true nature of the use is always a judicial question. Dallas Cotton Mills v. Industrial Co., Tex.Com.App., 296 S.W. 503, at page 505; Housing Authority v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79 at page 84, 130 A.L.R. 1053. It does not necessarily follow that the determination of this question always involves issues of fact which must be submitted to a jury. The Legislature has no power to enlarge the power of eminent domain so as to authorize thereunder the taking of private property for other than public uses, and it must be presumed that it had this limitation in view when it enacted S.B. 123, supra, and framed it in subordination to, rather than in violation of, this limitation; unless, indeed, the infringement is apparent from the express purposes or obvious effect of the Act. Borden v. Trespalacios Rice & Irr. Co., 98 Tex. 494, 86 S.W. 11, 107 Am.St.Rep. 640; West v. Whitehead, Tex. Civ.App., 238 S.W. 976, writ refused.

■ That the purposes for which the lands are to be acquired expressed in S.B. 123; i.e., to be "established, dedicated and set apart as a public park for the benefit and enjoyment of the people," establish conclusively a public use, as a matter of law, we think apparent. Malloy v. Galveston County, Tex.Civ.App., 42 S.W.2d 163, writ refused; Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4, at page 9.

■ The use for which the lands are sought to be condemned being a public use, the question of necessity of taking the fee simple title thereto, including the minerals, for this purpose is essentially a political question—one of expediency—for determination by the Legislature or such subordinate agencies to which it may grant the right of eminent domain. Such determination becomes a question for judicial review only when abuse by the Legislature or such agencies of their prerogative is apparent. McInnis v. Brown County Water Imp. Dist. No. 1, Tex.Civ.App., 41 S.W.2d 741, writ refused; Housing Authority v. Higginbotham, supra; Joyce v. Texas Power & Light Co., Tex.Civ.App., 298 S.W. 627.

■ Here, the Legislature, in the exercise of its prerogative, has determined that necessity exists for the acquisition of the fee simple title to this land "without any reservation of any character whatsoever" for use as a public park. That the exercise of rights incident to the ownership of minerals underlying the surface of lands dedicated to use as a public park might seriously interfere with the full use and enjoyment of the surface for park purposes cannot be denied. It requires little imagination to picture how the opening and operation of an oil field within the park area would detract from the beauty of the park, retard its development, render more difficult its maintenance, and seriously interfere with, if not prohibit, use of the surface of land from which minerals were taken for park purposes. That such considerations may have moved the Legislature to insert the mandatory provision that the title should be acquired in fee is inferable from the opinion in Greene v. Robison, supra. Certainly such provision does not indicate such abuse of legislative prerogative as to present a question for judicial review.

■ Appellant, as the surface owner, relied on the Relinquishment Act as the source of the rights, privileges and benefits that he claimed in reference to the minerals. In acquisition of the surface through condemnation, the loss of these rights, privileges and benefits were properly considered as an element of damages. No question of necessity of taking the minerals requiring any findings of fact was presented.

■ That the Act contemplated that the area, when acquired by the State, should be conveyed to the United States Government "for the use of the public for recreational park purposes" and authorized the Governor to execute a deed of conveyance therefor "in consideration of the United States Government agreeing to establish and maintain said area as a National Park" in no way impairs the power of the State to condemn. The purpose for which the land is sought is still a public use—a use by the State. The establishment and maintenance of public parks in the State is a well-recognized governmental function of the State as well as of the United States. The question of the State's power to condemn land for the use of the United States in carrying out the public and governmental functions assigned exclusively to the United States by the Constitution, as, for example, for a post office or custom house, is not here involved. The function here is dual. Rockaway Pacific Corp. v. Stotesbury, D.C.N.D.N.Y., 255 F. 345. This question, though not directly raised, was, nevertheless, inferentially decided in King v. Sheppard, Tex.Civ.App., 157 S.W.2d 682, writ refused, W.M. There the validity of the appropriation to pay for the lands acquired in accordance with the provisions of S.B. 123, supra, specifically including lands acquired through condemnation proceedings, was sustained. Implicit in such holding is the validity of the power to condemn.

■ The Special Commissioners who made the award were appointed by the County Judge on the same day that appellee filed its petition and written statement with him. Appellant was a non-resident of the county, and it appears that no opportunity was afforded him to object or agree to their appointment. While the statute (Art. 3264, subd. 2) provides that in appointing the Commissioners, the Judge shall give preference to those agreed upon

by the parties, yet the power of appointment is not dependent upon such agreement. Angier v. Balser, Tex.Civ.App., 48 S.W.2d 668, 669, writ refused; 16 Tex.Jur. p. 749, Sec. 130.

■ The only grounds on which appellant attacked the qualifications of the Commissioners were that they had sat as Special Commissioners in approximately forty other condemnation suits involving land in the Big Bend National Park area, and had entered more than forty awards involving similar land; that they had discussed the value of the land with the officials of the Park Board prior to the hearing; and that they had received compensation for acting as Special Commissioners in more than forty cases prior to the hearing, and would receive such compensation in many cases that had not been disposed of. In our opinion none of these objections were sufficiently tangible to have required the court to set aside the award; and, a fortiori, the judgment, which was not based thereon. Indeed, to our minds the experience acquired by the Commissioners through their service in other cases, could but tend to better qualify them for service as Special Commissioners.

■ Eight members of the jury panel were members of the Alpine Chamber of Commerce which had been very active in locating the Park. One of them had made a trip to Austin in the interest of locating the Park. Three of them, on their voir dire, expressed the view that there was a necessity to condemn this land, and that it would take some evidence to convince them that it was not necessary to condemn it; also that each had his idea about values and that it would take some evidence to change it. They all testified that they could and would lay aside any ideas that they might have as to the value of lands and their interest in locating the Park, and consider only the evidence introduced if they were selected as jurors. Challenge for cause was overruled, and appellant was forced to accept two of these jurors after exercising his peremptory challenges. It was stipulated that the parties had failed to agree upon a price for the land. As we have said, no jury question as to the State's right to condemn or necessity for condemnation was presented. The opinions as to value which "it would require some evidence to change" were not shown to be of value of the particular land in controversy, but appear to have been of

land in the Big Bend area generally. In this state of the record, we think no such bias or prejudice against appellant requisite to disqualify these prospective jurors for service within the purview of art. 2134, subd. 4, R.C.S.1925, affirmatively appears, and that abuse of the trial court's discretion in overruling the challenge for cause is not shown. Choctaw, O. & T. R. Co. v. True, 35 Tex.Civ.App. 309, 80 S.W. 120; Galveston, H. & S. A. Ry. Co. v. Contois, Tex.Civ.App., 279 S.W. 929, at page 935, affirmed, Tex.Com.App., 288 S.W. 154; Washington v. Austin Nat. Bank, Tex.Civ. App., 207 S.W. 382, 383, at page 391, last column, writ refused.

■ Appellee's witness Taylor Coe, who was employed by the University of Texas in its Land Department as a research geologist, was permitted, over objection, to outline the geological features of the area surrounding Survey 31, Block 19, and to give his opinion, in effect, that the chances for oil and gas on this section were not very good. Objection was leveled at his testimony to the geological features because his geological information was based on hearsay. He testified that he had been in the Big Bend Park area four times doing geological work, and had studied most of the published and unpublished geological material of this area; that one of his studies was made in connection with a Geological Society field trip; that his testimony was based on "what I have read and the information I gathered from discussions with numerous geologists, and from my own observations." Shortly before the trial he spent several hours in the neighborhood of appellant's land for the purpose of examining it. He admitted that his testimony was based "in a large part on geological reports made by others." We think the testimony was admissible. The conclusions of an expert as to so technical a subject as the geological features of a defined area arrived at in part from study of unsworn reports prepared by other experts are analogous to the diagnosis by a physician based in part on unsworn reports of tests made by hospital technicians. Testimony of diagnoses based in part on such reports has been held to be admissible. Sundquist v. Madison Rys. Co., 197 Wis. 83, 221 N.W. 392; see also Abbott's Civil Jury Trials, 5th Ed., p. 587. The objection, we think, goes more to the weight to be given to, than to the admissibility of, such testimony. Testimony pred-

icated both upon personal knowledge and upon hearsay has been held to be admissible in this jurisdiction. Norris v. Lancaster, Tex.Com.App., 280 S.W. 574.

 There was a sharp conflict in the testimony as to the value of the land in question. In condemnation, as in other cases, the rules governing the authority of an appellate court to set aside a verdict because of inadequacy are the same as those applicable to excessive verdicts. Nunn v. Daly, Tex.Civ.App., 150 S.W.2d 834, writ dismissed, correct judgment. And where the verdict has support in the evidence, it should not be disturbed. Joyce v. Dallas County, Tex.Civ.App., 141 S.W. 2d 745.

The judgment rendered awarded to appellee the possession and fee simple title to the land in question. However, it further awarded appellant the sum of $815.13 as damages, and ordered appellee to pay such sum to appellant. It also contains the following provisions:

"It is further ordered, adjudged and decreed by the Court that the payment of said money as herein provided, shall be considered as payment to the owner of said land to such an extent as to entitle said Petitioner to take possession of said lands and rights so sought to be condemned, and as hereinafter described, for which appropriate Writs of Possession may issue."

* * * * *

"And it is further ordered, adjudged and decreed by the Court that all writs of execution, writs of possession, and/or other writs and process necessary to enforce this decree, issue from time to time upon demand by any party entitled thereto."

 It will be noted that the judgment does not authorize the issuance of a writ of possession before the sum awarded as damages is paid. Art. 3268, subd. 1, R.C.S., requires payment of the amount of damages awarded or deposit of same in money in court only "if the plaintiff in the condemnation proceeding should desire to enter upon and take possession of the property sought to be condemned." The statute does not prohibit the entry of a judgment awarding possession without payment or deposit. Such construction would nullify the entire proceeding, since, until judgment is rendered, the amount of the award has not been authoritatively determined. Until the amount of damages awarded is paid or deposited, any attempt of the condemnor to take possession is unlawful, and the acts committed a trespass, for which the condemnee may recover damages suffered. Wilson v. Newton County, Tex.Civ.App., 269 S.W. 227. The condemnee may waive his right to demand compensation in advance of the taking, and if he does so, the proceedings are not void on that account. Walsworth v. San Antonio & A. P. R. Co., Tex.Civ.App., 10 S.W.2d 194.

By supplemental transcript it appears that since the rendition of the judgment herein appellee has deposited $815.13, the amount of the award, with the Clerk of the County Court of Brewster County to be paid to appellant if his appeal should not be successful.

We find no error. The judgment is affirmed.

This opinion directed to be written and is adopted by the Court.

WALTHALL, J., not participating.