A. J. TUTTLE and wife, Alie Bob Tuttle, Appellants,

v.

The STATE of Texas et al., Appellees.

No. 7560.

Court of Civil Appeals of Texas.

Texarkana.

July 14, 1964.

Rehearing Denied Aug. 4, 1964.

L. F. Burke, Longview, for appellants.

Earl Roberts, Sr., Earl Roberts, Jr., Ralph Prince, George McCrea, Longview, for appellees.

FANNING, Justice.

Three condemnation proceedings, instituted by the State of Texas and County of Gregg against A. J. Tuttle and wife, Alie Bob Tuttle, for the purpose of acquiring road right-of-way and drainage easements through their farm in Gregg County, were consolidated. A 12.410 acre strip and a 8.697 acre strip were taken for road right of way and a 2.247 acre strip was taken for a drainage easement in connection with the construction of said road, to-wit, State Highway Loop No. 281, all of said tracts aggregating 23.354 acres of land. Trial was in the County Court of Gregg County with the aid of a jury. The special issues submitted and the answers of the jury thereto were as follows:

*"SPECIAL ISSUE NO. 1:*

"From a preponderance of the evidence, what do you find was the market value of the strips of land belonging to A. J. Tuttle and wife, condemned by the State and County for highway pur-

poses at the time it was condemned, considered as several lands?

"ANSWER IN DOLLARS AND CENTS:

"ANSWER: $14,280.00

*"SPECIAL ISSUE NO. 2:*

"From a preponderance of the evidence, what do you find was the market value of Defendants' tracts of land, exclusive of the strips of land condemned immediately before the strips were taken for highway purposes?

"ANSWER IN DOLLARS AND CENTS:

"ANSWER: $151,950.83.

*"SPECIAL ISSUE NO. 3:*

"Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally, and not peculiar to them, and connected with their ownership, use and enjoyment of the particular tracts of land across which the strips of land have been condemned, and taking into consideration the uses to which the condemned strips are to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defendants' tracts of land immediately after the taking of the strips condemned for highway purposes?

"ANSWER IN DOLLARS AND CENTS:

"ANSWER: $177,815.00"

Judgment was rendered on said verdict awarding the sum of $14,280.00 (less $13,640.20 deposited in the registry of the court and theretofore withdrawn by the Tuttles) to the Tuttles for the land taken. No damages were awarded to the Tuttles for alleged damages to their remaining lands. The Tuttles have appealed.

■ Appellants question the necessity of and the sufficiency of the showing of authority for the condemnation of their property by the condemnors. There was introduced in evidence a resolution of the Commissioner's Court of Gregg County, Texas, authorizing an entry into an agreement with the State of Texas in which the County of Gregg and the State of Texas would acquire right-of-way for the construction of the proposed Loop No. 281, and attached to the resolution is a copy of the agreement with the Texas State Highway Commission, and other documentary evidence was introduced in evidence. All the documentary evidence with respect to the requisite authority to maintain this condemnation action by the State of Texas and County of Gregg as well as testimony bearing on the authority of the condemning authorities have been considered and it is deemed that there was a sufficient and satisfactory showing made in the record that the condemnors had the authority to condemn the property of the appellants, and appellants' contentions to the contrary are overruled.

■ As for the necessity for the construction of State Highway Loop No. 281 through the property of appellants it is clear from sufficient evidence in the record that such a decision was made by the condemning authorities. No fraud or abuse of discretion on the part of the condemning authorities in determining the necessity for condemnation is shown in the record. Appellants' contentions questioning the necessity of the condemnation of their property for the purposes sought by appellees are overruled. Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 130 A.L.R. 1053 (1940); Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4 (1937); Bobbitt v. Gordon, Tex. Civ.App., 108 S.W.2d 234, no writ, (1937).

Appellants contend to the effect that there is no evidence to support the jury's answers to special issues Nos. 2 and 3. We also gather from appellants' brief that they contend to the effect that the answers of the jury to special issues Nos. 2 and 3, amounting to a finding of "no damages" to appellants' remaining lands are so against the great weight and preponderance of the evidence as to be manifestly unjust and clearly wrong.

Three tracts of appellants' lands were condemned. One tract of 2.247 acres was to be used by the State as a drainage easement, and another tract of 8.697 acres was to be used by the State in the actual highway right-of-way, and these two tracts were located west of McCann Road. The other tract of 12.410 acres, located east of McCann Road, was to be used as a part of the highway right-of-way.

Appellees presented two expert witnesses and appellants presented one expert witness. Other witnesses testified and numerous pictures, maps and exhibits were placed in evidence. The record in this case is lengthy and voluminous. However, as usual in cases of this character, the experts differed on the questions of values. Likewise the testimony of appellants' other witnesses tended to show damages to the remaining lands, such as showing of lack of unity of use, difficulty of access to the severed lands, siltation of a pool from dirt and dust occasioned by the construction, various cuts and fills as shown by maps and pictures, and other matters. Appellees' witnesses attempted to counter the damages claimed, etc.

Walter and Brawner were the expert witnesses for appellees; Comer was the expert witness for appellants. All three duly qualified as experts.

Appellants' land was located about three miles from the City of Longview, Texas, and was being used as farm and pasture land by appellants. Appellees' expert witness Brawner testified to the effect that the highest and best use of the land in question, after the taking, was not as farm and pasture land, but as potential subdivision land.

We quote from Mr. Brawner's testimony in this respect in part as follows:

## "RE-DIRECT EXAMINATION

"By Mr. Roberts:

"Q. Mr. Brawner, after the taking, you spoke of the highest and the best I believe use of the whole tract, now what do you mean by that from a real estate man's standpoint?

"A. Well in appraising property we always, after we examine the property and get into all details of it, before arriving at a value, we try to appraise it for its highest and best use and in so doing the upper limits are involved, in this case our highest and best use for that property was property we considered as potential subdivision land and prices were given according to that and that's the reason that no separate *renumeration* was made for fences and this, that and the other because the price we appraised it for, if they want fences they can sure put up fences because at $700 an acre, that isn't pasture land.

"Q. Is that farm land * * *

"A. I sold 300 acres out Judson road for $60 an acre that was good pasture land.

"Q. Could this be appraised at its highest and best use as pasture land or farm land?

"A. No, sir, it could not, *it if* did * * *

* * * * * *

## "RE-CROSS EXAMINATION

"By Mr. Burke:

"Q. Mr. Brawner, you have stated you took into consideration part of his land for potential subdivision?

"A. Correct.

"Q. How many acres did you take into consideration was adaptable or could be adapted to subdivision property?

"A. I think it's all potential subdivision land.

"Q. You think all of it is potential subdivision land?

"A. Yes, sir.

"Q. Alright now what is the going price per acre out there that people have been paying for subdivision property, isn't it 12 or $1300 an acre?

"A. I haven't known of any that sold for that at the time we made our appraisals, no sir.

"Q. At the time * * *

"A. The amount that any investor or builder will pay for a piece of subdivision land depends on how much cost they've got to go to develop it.

"Q. What we're talking about here is the comparable values of property in this area, now the question is, isn't it a fact and you know it's a fact that they've been paying 12 to $1500 per acre out there in that area for land to be converted into subdivision?

"A. I gave two that was 600 and 800 an acre.

"Q. Don't you know that some of it out there sold for between 12 and $1500 an acre in the same area?

"A. The only tract I know of that has sold, has been an after sale—only one I know of out there that has got up that high has been an after sale after the highway was estab-

lished that it was coming through that had been on the market that I know of for three years and hadn't sold for lots lesser value and that was the Vierling tract.

"Q. What is the date of it please sir?

"A. I don't believe I have that.

\* \* \* \* \* \*

"Q. December 12, 1962, if you want the date on it.

"A. December 12th.

"Q. How much an acre did it bring.

"A. I believe that was somewhere in the vicinity of $1300, I'd consider that an after sale due to the highway going through there.

"Q. 1367 would be about right, wouldn't it?

"A. Yes sir.

"MR. BURKE: I believe that's all."

The three experts testified in detail as to their opinions of the value of the remaining tracts immediately before and after the taking, some testifying as to what they considered were comparable sales, and some testifying as to what they considered the highest and best uses, etc., of the remaining lands. We will not attempt here to break down into details all the specific values given, but will briefly summarize as to the values testified to by the three experts.

Appellants' expert witness Comer's opinions on values were as follows:

1. Total value of strips of land taken ........... $ 20,351.55

2. Total value of remaining land before taking, .... $242,204.14

3. Total value of remaining lands after taking, .... $193,534.18

The net effect of Comer's opinions of values is that the strips taken were of the value of $20,351.55, and that the remaining lands were damaged or suffered a decrease in

value of $48,649.96. The total of such values was $69,001.51.

Appellees' expert witness Walter's opinions on values were as follows:

1. Total value of strips of land taken ........... $ 11,361.00

2. Total value of remaining lands before taking, .... $135,789.00

3. Total value of remaining lands after taking, ...... $165.107.00

The net effect of Walter's opinions of values is that the strips taken were of the value of $11,361.00, and that the value of the remaining lands was greater after the taking than before the taking. Consequently under his values the remaining lands suffered no damages.

Appellees' expert witness Brawner's opinions on values were as follows:

1. Total value of strips of land taken ........... $ 11,985.00

2. Total value of remaining lands before taking .... $156,744.00

3. Total value of remaining lands after taking ...... $177,815.00

The net effect of Brawner's opinions of values is that the strips taken were of the value of $11,985.00, and that the value of the remaining lands was greater after the taking than before the taking. Consequently under his values the remaining lands suffered no damages.

The finding of the jury as above shown on the value of the strips taken ($14,280.00) was more than testified to by appellees' expert witnesses and less than the value testified to by appellants' expert witness. The jury found the value of the remaining lands before the taking to be $151,950.00, which was less than the value of appellants' expert Comer and less than the value of appellees' expert Brawner, and was more than the value of appellees' expert Walter. The jury found the value of the remaining lands after the taking to be $177,815.00, which

was the value testified to by appellees' expert witness Brawner, and which amount was more than the value testified to by appellees' expert witness Walter. This was less than the value testified to by appellants' expert witness Comer. (However, under Comer's testimony, the value of the remaining lands before the taking was $242,204.14, and the value of the remaining lands after the taking was $193,554.18, resulting in the remaining lands being damaged or suffering a decrease in value of $48,649.96, according to the opinion of Comer). The end result of the jury's answers to special issues Nos. 2 and 3 is that appellants' remaining lands were not damaged.

Appellants' contentions to the effect that there is no evidence to support the jury findings to special issues Nos. 2 and 3 are overruled. The jury's answers to special issues 2 and 3 are within the limits of testimony adduced. It has been held that in a condemnation case of this kind the jury, when considering the value of the condemnees' remaining property immediately after condemnation is restricted only by the lowest figure testified to, and a jury is at liberty to reach its conclusion by blending all of the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry, and jurors are not compelled to credit all of the testimony of any witness or to reject it all; also opinion evidence is not conclusive, a jury may consider and accept or reject such opinions or it may find its own opinion from evidence and by utilizing its own experience in matters of common knowledge. See Roberts v. State, Tex.Civ.App., 350 S.W.2d 388, no writ (1961) and the numerous authorities cited therein.

Viewing the evidence most favorably against appellants on the contentions of "no evidence", as we are required to do, we are of the opinion that we cannot say that there was no evidence to support the jury's findings to special issues Nos. 2 and 3, and appellants' contentions to that effect are overruled.

Rule 328, Texas Rules of Civil Procedure, provides that new trials may be granted when the damages are manifestly too small or too large. In condemnation, as in other cases, the rules governing the authority of an appellate court to set aside a verdict because of inadequacy are the same as to those applicable to excessive verdicts. Thompson v. State, Tex.Civ.App., 319 S.W.2d 368, no writ (1958); Schooler v. State, Tex.Civ.App., 175 S.W.2d 664, wr. ref., w. o. m. (1943). And an appellate court will reverse and remand a condemnation case where the damages awarded are inadequate or without support in the evidence or against the great weight and preponderance of the evidence. See Schooler v. State, supra (175 S.W.2d 664) and authorities cited therein. Also see In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952).

The jury heard the extensive evidence adduced and by their answers to issues Nos. 2 and 3 found in effect that appellants' remaining lands had not decreased in value but had increased in value and finding in effect that plaintiffs' remaining lands were not damaged. After carefully examining the entire record in this cause in the light of the rules enunciated in the case of In re King's Estate, supra, it is our best judgment that the jury's answers to special issues Nos. 2 and 3, and the failure of the jury thereby to find any damages to appellants' remaining lands, were within the reasonable exercise of the function of the jury, and that such findings were not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' contentions to the contrary are overruled.

Appellants also contend to the effect that the trial court erred in permitting any witness to testify that the defendants were benefited by the construction of the highway across their land since the State failed to plead that defendants would be particularly benefited. Appellants also contend to the effect that there was a failure

on the part of appellees to prove that any special benefits had accrued to appellants by the highway construction through their farm and that such benefits, if any, were common to the community in general and not special to appellants. Appellees answer the above referred to contentions of appellants, as well as other related contentions, and we quote in part from appellees' brief as shown below.[1]

 It is well settled that the measure of damages to the residue of the property is the market value thereof immediately before the taking, less the market value immediately after the taking. The correct method of adducing evidence as to market value is by witnesses, after suitable qualification, giving their opinion as to the market value of the residue before and after taking, rather than to undertake to testify to specific items of injury or damages. County of Nueces v. Salley, Tex.Civ.App., 348 S.W.2d 397, wr. ref., n. r. e., (1961); State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194 (1936). We quote in part from the opinion in the Carpenter case, at p. 201, as follows:

"For various reasons, we have concluded that a trial court in the admission and exclusion of evidence cannot eliminate all evidence of 'community' benefits and injuries as touching questions of value and depreciation in value. As indicated above, the correct method of adducing evidence as to market value is by witnesses, after suitable qualification, giving their opinion as to the market value of the residue before and after the taking, rather than undertaking to specify the specific items of injury and damage. See Gainesville, H. & W. Railway Company v. Hall, 78 Tex. 169, 175, 176, 14 S.W. 259, 9 L.R.A. 298, 22 Am.St.Rep. 42. If the witness answers that there has been a depreciation or enhancement in the market value after the taking, in either event it is proper to question him as to the basis of his opinion and the matters he has taken into consideration in things he has considered in

---

1. "Appellants in their brief set out certain points in which they allege that Appellees' witnesses testified over their objections to the enhancement of the value of the property of Appellants. They complain in Point 19 that the evidence admitted was not supported by the pleadings; no such objection was made in the trial court. In Point 21 Appellants complain that evidence was introduced of enhancement of value generally to the community; no objection was made on this grounds in the trial court. In Point 24 Appellants complain that Appellees have wholly failed to plead and prove special and peculiar benefits resulting to the land of A. J. Tuttle and yet do not complain of any error on the part of the trial court. In point 28 Appellants complain that Appellees having failed to plead that Appellants would be particularly benefited, the Sourt erred in permitting the witness to testify that Appellants benefited by the construction of the highway across their land; this point does not indicate any objection by Appellants nor any adverse ruling by the Courts concerning this matter.

"State v. Carpenter [126 Tex. 604], 89 S.W.2d 194 (Comm.App.), is the landmark Texas case concerning condemnation. It has been followed by countless cases, both Supreme Court and Court of Civil Appeals, and the issues which it frames as suggested special issues in a condemnation case has been universally used in the trial of condemnation cases.

\* \* \* \* \* \* \*

"It will be noted that the question asked each of the expert witnesses for Appellees was phrased in the wording of the Carpenter case and each of the questions concerning the market value of the remainder immediately after the taking asked the witness to exclude the increase or decrease to the property which was shared by the landowner with the community in general. In reply to this question, each of the witnesses stated their opinion as to the market value, and it can only be presumed that the witnesses obeyed the instructions of counsel for Appellees in his question and excluded such increase or decrease.

\* \* \* "

arriving at his opinion of market value were 'community' benefits or injuries, but that there were other things of a legitimate nature which influenced his opinion, this should not invalidate his evidence altogether. For this reason, among others, it occurs to us that the matter cannot be controlled altogether in the admission and exclusion of evidence. It follows, therefore, that without some limitation or instruction in the charge, a finding of market value of the land after the taking would necessarily include value contributed thereto by community benefits as well as special benefits. It is of course settled that enhancement in market value of the residue of the land by reason of 'special benefits' is a legitimate offset to damages thereto, but not to the value of the part actually taken. The statute has not defined 'special benefits.' It has only undertaken to define community benefits and negatively authorizes all other benefits to be taken into account. A finding as to market value would include such benefits, and should do so. It should not include, however, value because of community benefits, and for this reason we have concluded that provision should be made in the charge for excluding such benefits. We think this can be more appropriately done by proper special issues rather than by an instruction of the court."

In Rayburn, Texas Law of Condemnation, Sec. 74(1), p. 272, it is stated to the effect that if a condemnor desires to avail himself of the plea of special benefits it must be specifically plead and that in addition to pleading proof is required to raise the issue. However, in the case at bar *no objection was made by appellants to any evidence on the ground that appellees had not filed any pleading with respect to special benefits.* While appellees' evidence with respect to special benefits is largely general and circumstantial it is our best judgment that we are unable to say from

the record in this case that there is 'no evidence' of special benefits accruing to appellants by reason of the construction of the road in question as it appears from the record that appellants, among other things, will have considerably more road frontage than they had before, and that such greater road frontage, considering that the land is only three miles from the City of Longview and other circumstances in the case, would make said property more valuable for potential subdivision purposes, as well as perhaps for other purposes. In this connection see City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176 (1951), wherein at pages 179 and 180 it was stated in part as follows:

"Another point presented to the Court of Civil Appeals assigned as error the trial court's ruling upon the admissibility of certain evidence. A witness for the City gave his opinion that the market value of the remainder of Priolo's tract immediately after the taking of the strip by the City was increased by the improvements. The question propounded to the witness called upon him to exclude the increase in value and decrease in value by reason of benefits or injuries received in common with the community generally and not peculiar to Priolo and connected with his use and enjoyment of his tract of land. On cross-examination the witness stated that he could not tell of any benefits that the Priolo property received that other property similarly situated would not receive. Motion was then made that the witness' testimony be stricken on the ground that he was testifying to community benefits only. The court did not err in overruling the motion to strike. A community may receive general benefits from the constructing or improving of a highway, but the owner of property adjacent to the highway may suffer an injury or receive a benefit different from that of the community as a whole. * * * In City of Dallas

v. Firestone Tire and Rubber Company, Tex.Civ.App., 66 S.W.2d 729, writ refused, it was held that the owner received special benefits because of the widening and straightening of the street abutting its business. That was not a condemnation suit, but did involve the question of special benefits. The opinion pointed out that just because other businesses along the street in the same category got the same benefit would not prevent the benefits derived by the appellee in the case from being special. The community generally did not receive the same benefits that the appellee received in that case. Priolo's property was at a point where Dolphin Road made a jog, and by taking the strip from the front of his lot the City was able practically to eliminate the jog and provide for a free flow of traffic by his place of business on a wider and better type of pavement. It cannot be held as a matter of law that a special benefit was not thereby conferred upon him."

In City of Tyler v. Ginn, Tex.Civ.App., 225 S.W.2d 997 (1949), wr. dis., w. o. j., 148 Tex. 604, 227 S.W.2d 1022 (1950), it was stated in the opinion of the Court of Civil Appeals, 225 S.W.2d at pages 998 and 999, in part as follows:

"In arriving at the value of the condemned property and damages thereto consideration may also be given to the purposes for which the property is being used at the time of its condemnation. Texas Power & Light Co. v. Snell et al., 15 S.W.2d 180, by this court. It was held in Cincinnati Union Terminal Co. v. Banning, 27 Ohio N. P., N.S., 548, that all uses of the property condemned may be shown including its highest use. Under the above authorities it is our opinion that the proffered testimony was admissible as bearing upon the damage to the remaining part of appellees' homestead after the strip across the front had been condemned. There seems to be no question but that appellees are entitled to the highest value for which the property is adaptable. This rule we think applies not only to the property taken but also to the damage sustained to the remainder of appellees' homestead. But if appellant has evidence showing that the part of appellees' home remaining with the improvements, after the condemnation of the strip in front of it, it is worth more, taking into consideration any and all uses to which it is reasonably adapted, after the improvement of Highway 31 than before the improvement was made, then the city would have a right to produce said testimony. Under such circumstances the appellees would not be damaged and, of course, would not be entitled to recover. * * *"

It is our view that the last above referred to contentions of appellant do not present reversible error under the whole record in this cause, and the same are overruled. Rule 434, T.R.C.P.

Appellants further contend that the trial court erred in excluding evidence of certain stated sales which appellants contend were proper comparable sales and admissible as comparisons to the property under condemnation in this cause and that the trial court erred in excluding certain sales which occurred more than five years from the date the amount of the award was paid into court by the condemnors.

In Rayburn, Texas Law of Condemnation, Sec. 127, p. 403, it is stated in part as follows:

"It is settled law, that where testimony is presented showing that closely similar property in the immediate vicinity of the subject land has sold on the general market, that these sales prices are admissible, as bearing upon

the question of market value, if they are not too remote in point of time.

\* \* \* \* \* \*

"It is probable that the 5 years mentioned in this section is about the extreme limit of reasonable time that might be thrown on this type of inquiry, as to a bearing on market value."

In condemnation cases a trial court is vested with a sound judicial discretion to determine the admissibility of evidence of prior sales and the rules vary with the facts of the case. The rule is aptly stated in City of Houston v. Pillot, Tex.Civ.App., 73 S.W.2d 585 (1934) reversed on other grounds in 105 S.W.2d 870, Tex.Comm. App., (1937) wherein at page 591 of the opinion of the Court of Civil Appeals, it is stated in part as follows:

"The questions of the degree of similarity and nearness of time and distance necessary in cases of this kind, to render testimony of sales of other property admissible in evidence, is not predetermined by any inflexible, hard and fast general rule, but must rest largely in the discretion of the judge, and the rules vary with the facts of the cases."

We have examined the proffered evidence of the alleged comparable sales, and have reached the conclusion that this record does not show that the trial court abused its discretion in excluding such proffered evidence. Appellants' contentions to the contrary are overruled.

Appellants' remaining points and contentions have been carefully considered and none of them are deemed as presenting reversible error under the whole record in the case, and the same are respectfully overruled. Rule 434, T.R.C.P.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.